# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MASSACHUSETTS (BOSTON)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**In Re:**
    Rowley Solar, LLC,

                **DEBTOR**                      Chapter 11
                                                    Case No. 19-12419-FJB

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### MEMORANDUM IN SUPPORT OF BONNI AND BARBARA BERKOWITZ' OBJECTION TO INVALEON TECHNOLOGIES CORPORATION'S MOTION (I) TO DISMISS THE CHAPTER 11 CASE PURSUANT TO 11 U.S.C. § 1112, OR, IN THE ALTERNATIVE, (II) FOR ABSTENTION PURSUANT TO 11 U.S.C. § 1334(c) AND RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362

*NOW COME* Barbara Berkowitz and Bonnie Berkowitz (the "Objectors"), by and through their attorneys, Ford, McDonald, McPartlin & Borden, P.A. and object to Invaleon Technologies Corporation's Motion to Dismiss the Chapter 11 Case or, in the alternative, for Abstention and Relief from the Automatic Stay (the "Motion"), and in support thereof, says as follows:

**INTRODUCTION:**

    Invaleon Technologies Corp. ("Invaleon") moves to dismiss this bankruptcy case of Rowley Solar, LLC ("Rowley Solar") on the claim that the member who signed the bankruptcy petition, Bonni Berkowitz, was not authorized. Invaleon is wrong on the facts and law.

    In the alternative, Invaleon seeks abstention. Invaleon misapplies the abstention statute and in any event no basis for abstention exists.

    Finally, Invaleon seeks relief from the automatic stay to "continue to litigate the Essex County action." The Berkowitz' believe that the litigation as presently presented, with its present claims for relief against property of Rowley Solar is a violation of the automatic stay and that no grounds exist to permit such claims to move forward. The Berkowitz' have no objection

and would agree that litigation limited to claims held or claimed to be held by Invaleon against themselves, or to determine ownership of the membership interests they hold in Rowley Solar LLC, would not be enjoined. The Berkowitz', of course, reserve the right, in any such litigation to bring the appropriate counterclaims.

**FACTS**

*Facts Related to the Identity of the Members at July 17, 2019*

The claimed lack of authority comes because Invaleon claims that it is the sole member and it did not execute nor authorize the Limited Liability Company resolution that authorized the bankruptcy.

Invaleon claims that it is the sole member because it and Rowley Solar (but not the Berkowitz' individually) executed a purchase and sale agreement[1] by which the Rowley Solar (but probably intending to mean the Berkowitz') agreed to convey all of its or their membership interests to Invaleon in exchange for the payment of $949,640.00. *Deposition of Kangkui Wu, 8/19/19 p. 137 l.23 – p. 138 line 18* . The purchase and sale agreement was drafted by Mr. Wu and others at Invaleon. *Deposition of Kangkui Wu, 8/19/19 p. 26 l. 9-17*. The purchase price of $949,640 has not been paid. $293,460.00 of that sum was paid but, in addition to numerous other breaches claimed by the Berkowitz', the parties agree the balance of $656,000.00 has not, to this date, been paid. *Deposition of Kangkui Wu, 8/19/19 p. 139 l.24 – p. 140 l. 6.*

The purchase and sale agreement provided that upon the happening of certain events the Seller (technically Rowley Solar but perhaps intending to mean the Berkowitz' who did not sign) would execute and deliver to Invaleon "an assignment agreement evidencing the conveyance of the Membership Interests to" Invaleon. *Membership Interest Purchase Agreement* §6.2.1 (3), DE 25-3 p 12 of 26. **Exhibit A** attached hereto. All parties agree that no such assignment was ever executed nor delivered. *Deposition of Kangkui Wu, 8/19/19 p. 38 l. 5-9.*

---

[1] Referred to in this proceeding as the Membership Interest Purchase Agreement or MIPA. The acronym "MIPA" tends to hide the fact that it is simply an ordinary purchase and sale agreement with the usual legal consequences. Because the words "purchase and sale agreement" lend greater clarity this Memo will use that term instead of "MIPA."

The purchase and sale agreement dealt with the conveyance of membership interests in Rowley Solar. Rowley Solar is a Delaware limited liability company. Rowley Solar has no operating agreement. *Affidavit of Bonni Berkowitz, ¶5.* Rowley Solar's certificate of formation and its amendments record the members of Rowley Solar. *Delaware Certified Records,* **Exhibit B** attached hereto. At all times, from the formation of Rowley Solar to today, Bonni and Barbara Berkowitz are identified as members in the records of the State of Delaware. *Id.* All parties agree that no amendment has ever been agreed to, executed, delivered nor filed deleting the Berkowitz' from the limited liability company as members and substituting Invaleon. *Deposition of Kangkui Wu, 8/19/19 p. 47 l. 13-8.* The records of Rowley Solar reflect and have always reflected that Barbara and Bonni Berkowitz are members. *Affidavit of Thomas Beatrice ¶ 3; Affidavit of Bonni Berkowitz ¶¶5, 6, 7, 8 & 9.*

The only document on which Invaleon bases its claim to own the membership interests is the purchase and sale agreement. *Deposition of Kangkui Wu, 8/19/19 p. 137 l. 24 – p. 138 l. 18.* There is no claim that any document of assignment has been delivered, there is no claim that any bill of sale has been delivered, there is no claim that any deed has been delivered, there is no claim that any membership certificate has been endorsed or delivered, there is no claim that any amendment to the certificate of formation has been executed or delivered. *Deposition of Kangkui Wu, 8/19/19 p. 47 l. 19 through p. 48 l. 8.* The only claim is that the purchase and sale agreement is self-executing and upon the payment of the first installment the Berkowitz' automatically are deemed to have conveyed their membership interest without further assignment, deed or bill of sale. The purchase and sale agreement, written by Mr. Wu, like all purchase and sale agreements, does not so provide and instead provides that on satisfaction of the closing conditions an instrument of conveyance would be signed. *Membership Interest Purchase Agreement* §6.2.1 (3). No instrument of conveyance ever having been executed nor delivered, the sole members are the Berkowitz'.

Recognizing that it was not a member of Rowley Solar, Invaleon sued the Berkowitz' to resolve the matter. The parties engaged in settlement discussion. Counsel exchanged drafts of

documents to embody a settlement, some of which were signed in advance of a closing or in the words of Invaleon's lawyer in advance of when the parties were to "meet to finalize the exchanges."  *Affidavit of Thomas Beatrice, Exhibit: Email of June 20, 2019 from Jonathan Sales to Attorney Thomas Beatrice.*

A document that was prepared and forwarded to Invaleon's lawyer, Attorney Sales, as part of the preparation to close and as evidence of the readiness of the Berkowitz' to close was a document entitled "MIPA Satisfaction Acknowledgement."  The Berkowitz' made the mistake of executing the document understanding that, even if it were shown to Invaleon, no one would understand it to be effective until or unless a closing occurred. *Affidavit of Bonni Berkowitz, ¶14.* A "pdf" copy with the Berkowitz'' signatures was forwarded to counsel for Invaleon to assist in preparing to close. *Affidavit of Thomas Beatrice, Esq. ¶ 19.* It appears that counsel forwarded that pdf document to Mr. Wu.

Closing did not occur. Invaleon never paid the moneys "receipt" of which the document acknowledged. *Deposition of Kangkui Wu, 8/19/19 p. 153 l. 1-4.* The document was not intended to be and never could be effective unless the closing of which it was to be a part happened and the money was exchanged. *Affidavit of Bonni Berkowitz, ¶¶13, 14, 15, 16, 17 & 18.* No closing ever occurring the "Acknowledgement" is of no effect.

Nevertheless, Mr. Wu printed it out; signed it; and now asks this Court to act on it as if it represented an agreement truly made, knowing full well that it was never intended to be effective in the absence of a closing. *Deposition of Kangkui Wu, 8/19/19 p. 154 l.10-20.*

*Facts Relating to the Requested Abstention*

The Essex County action is *Invaleon Technologies Corporation v. Bonnie (sic) Berkowitz and Barbara Berkowitz,* Trial Court, Superior Court Dept. Civil Action No. 19-CV-803-B.  The Complaint (but not its appendix) is attached hereto as **Exhibit C** (the "Complaint").  The Complaint was filed June 7, 2019.  It has not yet been served.  No answer is yet due.  The Complaint is thirty-nine pages single spaced.[2]  It's accompanying appendix is two hundred and

---

[2]  Mysteriously, the last page is numbered "44" in the lower right corner.  The Complaint appears to contain no

4

eighteen pages long.   The Plaintiff demands a jury trial.

The Complaint is of two minds about its relationship to the Debtor.   The Caption omits mention of Rowley Solar, LLC but paragraph 6 claims that Rowley Solar (the Debtor) is one of the plaintiffs.   That assertion is repeated in Paragraph 13.   The Complaint acknowledges that Rowley Solar, LLC, is to own the project.   ¶13 b.   The Complaint asserts that the sale of the membership interests was a sale of the assets of Rowley Solar. ¶15 a.

The relief the Complaint seeks includes damages, treble damages and so forth against the Berkowitz' individually; but in addition, the Complaint seeks to control the sale of the Debtor's assets by asking that the Court:

> Restrain the Defendants from attempting in any way to sell, or transfer, in whole or in part, the Solar Project or entertain any offers by third parties to purchase the Solar Project, any energy produced by the project.

*Complaint p. 36 (as numbered) Request 7.*   The Debtor will develop and own so-called "SRECS and investment tax credits."   The Complaint seeks to control that property of the estate by asking that the Court:

> Restrain the Defendants from attempting in any way to register, sell or transfer any of the SREC tax certificates, credits, and/or benefits that will be generated by the solar project.

*Complaint p. 36 (as numbered) Request 8.* One of the assets of the Debtor is the contractual right to interconnect with the Rowley Municipal Light Plant grid.   The Complaint also seeks to:

> Restrain the Defendants from interfering with the Plaintiff' (sic) Interconnection to connect the solar project with Rowley Light and from communicating in any way with the Town of Rowley or Rowley Light as managers or members of Rowley Solar LLC or on behalf of Rowley Solar LLC.

*Complaint p. 36 (as numbered) Request 8.* The right to interconnect is an asset of the Debtor which the Complaint seeks to manage or control. The Complaint seeks to possess and exercise

---

page 5, nor any pages numbered 40-43

5

control over property of the estate.   11 U.S.C. §362(a)(3).

Portions of the Complaint are claims (albeit mostly frivolous) made by one non-debtor against two other non-debtors.   While the Berkowitz' believe those allegations fail to state a claim and are otherwise frivolous, they are not stayed by the automatic stay.

Portions of the Complaint seek to exercise control over property of the estate and those portions of the Complaint are enjoined by 11 U.S.C. §362.

No part of the Complaint seeks to declare the ownership of the Membership Interests in the Debtor. Instead, the closest the complaint comes to such relief is the request that the Court:

> Restrain the [Berkowitz'] from holding the Membership Certificates of Rowley Solar LLC (both the Massachusetts and Delaware entities with the same name) hostage, and from not producing the membership interests forthwith to the Plaintiff.

*Complaint p. 36 (as numbered) Request 1*.   The Complaint seeks production of certificates which do not exist. The Complaint does not quite seek a declaratory judgment and it does not quite seek specific performance (since it omits reference to the exchange performance by Invaleon).

The Complaint does not seek to maximize the assets of the Debtor's estate, it does not seek to adjust or resolve the relations between the Debtor and its creditors.

### *Facts Related to Relief from the Stay*

Invaleon asks for relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) but fails to comply with Local Rule 4001-1 (b)(2).

Invaleon does not require relief from the automatic stay to proceed against the Berkowitz' and Invaleon states no grounds for relief from the automatic stay to proceed against property of the estate.

**LAW:**

**I.  THE UNDISPUTED FACTS ESTABLISH THAT THE MEMBERSHIP INTERESTS WERE NOT TRANSFERRED, INVALEON WAS NOT ADMITTED AS A MEMBER AS OF JULY 17, 2019 AND THE ONLY MEMBERS AT THE**

**DATE OF THE PETITION WERE BONNI AND BARBARA BERKOWITZ WHO WERE THEREFORE EMPOWERED TO AUTHORIZE THE PETITION.**

A. **Delaware Law Provides that Bonni and Barbara Berkowitz were Members on July 17, 2019 and then had authority to manage the Debtor.**

Under Delaware law, where, as here, there is no limited liability company agreement, a member becomes admitted as a member when the records of the company so reflect. Rowley Solar, LLC, the debtor, is a Delaware limited liability company. There is no operating agreement. The Delaware statute reads:

> (a) **In connection with the formation** of a limited liability company, a person is admitted as a member of the limited liability company upon the later to occur of:
>
> (1) The formation of the limited liability company; or
>
> (2) The time provided in and upon compliance with the limited liability company agreement or, if the limited liability company agreement does not so provide, when the person's admission is reflected in the records of the limited liability company.
>
> (b) **After the formation of a limited liability company**, **a person is admitted as a member** of the limited liability company:
>
> (1) In the case of a person who is not an assignee of a limited liability company interest, … at the time provided in and upon compliance with the limited liability company agreement or, if the limited liability company agreement does not so provide, upon the consent of all members and when the person's admission is reflected in the records of the limited liability company;
>
> (2) **In the case of an assignee** of a limited liability company interest, as provided in § 18-704(a) of this title and at the time provided in and upon compliance with the limited liability company agreement or, **if the limited liability company agreement does not so provide, when any such person's permitted admission is reflected in the records of the limited liability company;**
>
> …

7

*Del. Code Ann. tit*. 6, § 18-301 (West) (emphasis added).   No party in this proceeding argues that the records of Rowley Solar reflect the "permitted admission" of Invaleon as a member. The certified records of the Secretary of State show that Invaleon is not a member. The records of Rowley Solar and of the Secretary of State each show that Bonni and Barbara Berkowitz are the sole members.

As members each holding 50% interest, the management of the limited liability company was vested in Bonni and Barbara Berkowitz:

> Unless otherwise provided in a limited liability company agreement, the management of a limited liability company shall be vested in its members in proportion to the then current percentage or other interest of members in the profits of the limited liability company owned by all of the members, the decision of members owning more than 50 percent of the said percentage or other interest in the profits controlling

*Del. Code Ann. tit*. 6, § 18-402 (West).   As the holders of 100% of the membership interests, Bonni and Barbara had authority to authorize this bankruptcy proceeding on behalf of Rowley Solar, LLC.

The applicable Delaware law granted authority to Bonni and Barbara Berkowitz to file this voluntary petition.

### B. The Purchase and Sale Agreement Reinforces the Conclusion that Legal Title to the Membership Interest Was Not Conveyed.

1. *By its terms, the Purchase and Sale Agreement did not Convey any Membership Interests.*

The Membership Interest Purchased Agreement (the "Purchase and Sale Agreement"), being charitable to its authors (Mr. Wu and company), was not written by persons who understood what they were doing. Their fundamental misunderstanding was about the nature of a membership interest. Their Purchase and Sale Agreement contemplates that Rowley Solar, LLC, not owning any membership interest in itself, agreed to convey all of the membership interests in

8

itself to Invaleon. The Purchase and Sale Agreement is, thus, founded on a fundamental misconception of the asset being sold.

They misunderstood what was to be sold, but not the process of sale. The Purchase and Sale Agreement adopted the usual process of a sale. It provides that at a date in the future referred to as a "Closing Date" "the Seller **shall** sell …and the Buyer **shall** purchase" the membership interests. *Purchase and Sale Agreement* ¶1 (emphasis added).[3] The purchase and sale agreement announced and played its John the Baptist role predicting the coming of a future agreement greater and more important.[4]

The purchase and sale agreement then, like John the Baptist, described what the future agreements would be and do. Those future agreements would fulfill the promise. Those future agreements included:

> all necessary resolutions of the Seller and Company authorizing the transfer … an assignment agreement **evidencing the conveyance of the Membership Interests to the Buyer** in the form attached hereto as Exhibit A; and …At Closing the Company shall admit the Buyer as the sole member of the Company.

*Purchase and Sale Agreement, p. 12 of 26, ¶¶* 6.2.1 & 6.2.2. To the faithful, the promise of John, like the promise of the Purchase and Sale Agreement is a mere precursor, the miracle is in the fulfillment.

The miracle did not happen. As Mr. Wu testifies, no resolutions were delivered, no assignment agreement in the form of Exhibit A or any other form was executed or delivered, no bill of sale was executed or delivered, no deed, was given, and the Company took no steps to "admit the Buyer as the sole member of the Company." *Deposition of Kangkui Wu, 8/19/19 p. 38*

---

[3] In his deposition when pressed about the future tense of the foundational sentence of the purchase and sale agreement Mr. Wu disclaimed knowledge of what the word "shall" means. *Deposition of Kangkui Wu, 8/19/19 p. 40 l. 7 through p. 41 l. 22.*

[4] Matthew 3:1-12 ("In those days John the Baptist came, preaching in the wilderness of Judea and saying, 'Repent,

9

*l. 5 – p. 40 l. 1*.    John the Baptist came and proclaimed the coming of the lord, but the lord did not come.

The meaning of the Purchase and Sale Agreement is plain in its words: on executing the Purchase and Sale Agreement the parties were making promises of future performance one to the other.   The Purchase and Sale Agreement itself was not the future performance (just as John the Baptist never claimed to be Jesus Christ). The future performance was in the execution of defined documents.   The documents never having been executed and delivered, the conveyance did not happen – John the Baptist is not Jesus Christ and despite John's prophesy, to believers, if Jesus had not returned from the desert to die on the cross, John's promise would not bring salvation. The Purchase and Sale Agreement does not effect the transfer.

> 2. *No Doctrine of Equity Supplants the Rules of the Statute: Hereof the Demise of the "Grand Non-sequitur:" Equitable Conversion.*

The Delaware statute makes clear that no person is a member of a limited liability company such as this unless the records of the company so reflect.    The Purchase and Sale Agreement provides that the transfer will occur on the passing of documents named and described but never executed.   The black letter law grants no leeway to the purchaser: the transaction did not occur and the prior promises give rise to contract actions but no property right at law.

But law and equity are sometimes different. In some states other than the Commonwealth of Massachusetts the doctrine of equitable conversion might save the purchaser, but that rule holds no sway in Massachusetts.   As Judge Feeney explained, quoting Judge Queenan:

> Scott analogizes the constructive trust beneficiary's equitable rights to those of a buyer under a specifically enforceable contract, who is considered an equitable owner pursuant to the doctrine of equitable

---

for the kingdom of heaven has come near.' …'I baptize you with water for repentance. But after me comes one who is more powerful than I, whose sandals I am not worthy to carry.…'")

10

> conversion by contract. That doctrine, however, is a relic of the past whose sun has largely set. It does not prevent the rejection of such a contract from resulting in a claim. The doctrine is an application of the equitable maximum which regards as done that which should be done. The writers are highly critical of the doctrine. One calls it a "grand non sequitur" which disregards the reality that the contract has not been performed. Although the doctrine was in full sway during the nineteenth century, today most courts and legislatures reject it.

*In re Pina*, 363 B.R. 314, 328, fn 10 (Bankr. D. Mass. 2007). The Massachusetts cases rejecting the doctrine of equitable conversion are legion: in Massachusetts a purchaser under a contract subject to specific performance has a contract right but the seller holds title. *Kelley v. Neilson*, 433 Mass. 706, 714, n. 16 745 N.E.2d 952, 959 (2001) "(We agree with the Appeals Court that, in Massachusetts, the doctrine of equitable conversion is not available to the defendant.… Massachusetts does not follow the view recognized in many States that, on the execution of a purchase and sale agreement, the purchaser is regarded as the equitable owner of real estate, entitled to receive the rents and profits from the property."); *Wheeler v. Comm'r, N*o. 29320-09S, 2011 WL 2637320, at *4 (T.C. July 6, 2011) ("However, Massachusetts has taken a different approach. Under Massachusetts law, where an agreement to transfer an ownership interest in real property exists, the transferor retains the legal title to the property 'subject to an equitable obligation to convey' it to the transferee on payment of the purchase money price."); *Laurin v. DeCarolis Const. Co.*, 372 Mass. 688, 691, 363 N.E.2d 675, 677–78 (1977) ("We have taken a different view. When a purchase and sale agreement has been executed, the vendor holds the legal title to the property 'subject to an equitable obligation to convey' it to the purchaser 'on payment of the purchase money'..… Until the deed is delivered the vendor bears all the risks of ownership should the property be destroyed. …. He also has the exclusive right to possession of the property and the right to rents and profits.… Thus, the rights of the purchaser are contract rights rather than rights of ownership of real property."); *In re Luciani*, 584 B.R. 449, 458

(Bankr. D. Mass. 2018). The law in Massachusetts is that until the deed or instrument of transfer is executed legal title rests in the seller.

Bankruptcy practitioners might be excused for making the mistake of leaping on the equitable nature of remaining rights in the buyer and look to 11 U.S.C. §541(d) (excluding from property of the estate "property in which the debtor holds …only  legal title…") but Section 541(d) has no relevance here. The legal title of Bonni and Barbara Berkowitz in the membership interests is not property of the estate and so exclusion from the estate by operation of Section 541(d) is of no consequence.

At the time of filing (and today), Bonni and Barbara had legal title to the Membership Interests. If what they did by filing the petition gave rise to some cause of action by Invaleon against them then that is for another day in another court, but for this Court the authority of the legal title holders to file this bankruptcy petition is unimpeachable.

## C. **The MIPA Satisfaction Acknowledgment (the "Acknowledgement") Document Changes Nothing Except that Its Use in This Proceeding Creates Doubt as to Mr. Wu's Good Faith.**

1. *The MIPA Satisfaction Acknowledgment Changes No Part of the Records of Rowley Solar and Therefore Effects No Change in Membership.*

No part of any affidavit or testimony of Mr. Wu asserts that the MIPA Satisfaction Acknowledgement became part of the records of Rowley Solar. Bonni Berkowitz affirms that Rowley Solar had not received such an acknowledgement before the bankruptcy filing. *Affidavit of Bonni Berkowitz,* ¶18. Invaleon could become a member only when the records of Rowley Solar reflect it as a member. *Del. Code Ann. tit*. 6, § 18-301 (West). Since the MIPA Satisfaction Acknowledgment is not part of the records of Rowley Solar and provides no evidence that the records of Rowley Solar, LLC reflect any membership by Invaleon it is irrelevant. *See, Section I A. above.*

### *2. The MIPA Satisfaction Acknowledgment is Ineffective.*

Bonni and Barbara Berkowitz did not deliver and did not intend to deliver the Acknowledgment as an effective document. *Affidavit of Bonni Berkowitz ¶¶ 13 – 17.* Mr. Wu acknowledges that he does not know if it was intended to be effective. *Deposition of Kangkui Wu, 8/19/19 p. 118-119 l.17 through l. 6.*[5]

It is clear from the document that it was not intended to be delivered or effective until closing occurred. It is apparent from the document because it recites as true numerous statements which are false and could only be true after a closing occurred. For example, Paragraph 14 of the Acknowledgment acknowledges receipt of $949,640 when that sum has not been paid. *Deposition of Kangkui Wu, 8/19/19 p. 122-123, l.24 through l. 9.* Paragraph 16 of the Acknowledgement acknowledges receipt of $30,000 plus interest in lease payments when that sum has not been paid. *Deposition of Kangkui Wu, 8/19/19 p. 124, l.14-20.*

It is apparent that the Acknowledgment is part of an unconsummated settlement because, among other things, the Acknowledgement contains agreements and affirmations by Invaleon that are inconsistent with their litigation position including that: (a) up to and including the date of the execution of the Acknowledgment Bonni and Barbara Berkowitz "are the owners of 100% of the membership interests." *Acknowledgment ¶17.* (b) It includes mutual releases which are

---

```
5 WU, (Pages 118:17 to 119:6)
17   Q.      What date was this document
18   executed?
19       A.     I don't know.  I know, like I said
20   earlier, I signed this in June.
21       Q.      Do you know when this document was
22   intended to be effective?
23       A.      No, that's between Jon and Tom.
24       Q.      Was this document intended to be
                           119
 1   effective when the parties met to finalize the
 2   exchanges?
 3       A.      I don't know.
 4       Q.      Is this document intended to be
```

13

inconsistent with Invaleon's prosecution of the Essex County lawsuit. *Acknowledgment* ¶ 30.

The parties to the Acknowledgment did not intend it to be effective until they met to finalize the closing exchanges. In the words of Mr. Wu, Invaleon "signed the statement anticipating to be bound …when there was a meeting …That is correct." *Deposition of Kangkui Wu, 8/19/19 p. 154, l.10 – 20.*[6] That meeting did not happen the parties did not intend to be bound by the Acknowledgement.

The parties are agreed that the Acknowledgement was not intended to be effective unless the closing meeting happened. It did not. The Acknowledgment is therefore ineffective. By analogy to the law of real estate conveyance, without intent no delivery has occurred. *Tewksbury v. Tewksbury,* 222 Mass. 595, 597, 111 N.E. 394, 394 (1916) ("The mere manual act of handing the deeds to the defendant was not enough to constitute legal delivery. An intention that the deeds should operate as a present conveyance of title was also essential."); *Frankowich v. Szczuka*, 321 Mass. 75, 77, 71 N.E.2d 761, 762 (1947) ("The factors essential to delivery are that the grantor intend the deed to effect a present transfer of the property and that the grantee by his conduct assent to the conveyance.")

The Acknowledgment is irrelevant to this proceeding for at least the two above reasons: (a) it does not satisfy the requirements of the Delaware statute that the records of the LLC reflect

---

```
 5    effective today?
 6         A.      I don't know.
```
[6] WU, (Page 154:10 to 154:20)
```
10    Q.      You do not today believe that you
11    are bound by the statements made in that
12    document,[the Acknowledgement] do you?
13         A.      No, I signed a statement
14    anticipating to be bound.
15         Q.      Anticipating to be bound when there
16    was a finalized closing, correct?
17         A.      I don't know.
18         Q.      Or to use your words, when there
19    was a meeting?
20         A.      That is correct.
```

the proper admission of Invaleon as a member; and (b) possession the acknowledgement in preparation for a closing is not delivery and in the absence of intent, the document can have no effect.

### 3. *Even if "Effective" the Acknowledgement Fails.*

As a final matter, even if "effective" the Acknowledgement appears incapable of determining whether it is a contract or an estoppel certificate. In either event it fails. As a contract it fails as Invaleon acknowledges its own failure of performance: the $656,000 and the $30,000 plus interest not having been paid. *Restatement (Second) of Contracts* § 237 (1981) ("it is a condition of each party's remaining duties to render performances to be exchanged under an exchange of promises that there be no uncured material failure by the other party to render any such performance due at an earlier time."); *Rayner v. McCabe*, 319 Mass. 311, 314, 65 N.E.2d 417, 419 (1946) ("But a court of equity will not enforce a contract that would … give relief to one who cannot furnish or has failed to furnish the consideration required by the contract.")

As an estoppel it fails as Invaleon knows or has reason to know the truth and there can therefore be no reliance. *Restatement (Second) of Torts* § 872 (1979) ("If one person makes to another person a definite misrepresentation of fact concerning the ownership of property or its disposition, knowing that the other intends to act in reliance on it, and subsequently does an act or makes a refusal that would be tortious if the statement were true, the first person is subject to liability to the other as if the statement were true, provided that the other **in reasonable reliance upon the statement has so changed his position** that it would be inequitable to deny an action for the act or refusal.") (emphasis added).

The Acknowledgment is irrelevant, ineffective, and even if effective, does nothing. The Court should ignore it.

The record in this proceeding is that Bonni and Barbara Berkwitz are the only members

whose admission as members is reflected in the books of Rowley Solar, LLC.   As members they had the authority to file this proceeding.   The Purchase and Sale Agreement does not change that conclusion but merely raises the argument that Invaleon might have a contract right to specific performance and that Bonni and Barbara might be responsible to Invaleon if their conduct injures it, but until the alleged contract is performed the only members are Bonni and Barbara Berkowitz and so this proceeding is authorized and may not be dismissed.

## II. **ABSTENTION IS UNAUTHORIZED AND INAPPROPRIATE**

### A. **The Statute Does Not Authorize Abstention from a Case**.

Citing 28 U.S.C. §1334 (c), which deals with abstaining from "hearing a …proceeding", Invaleon asks this Court to abstain from hearing this "case." The statute permits no such relief.

Section 1334 is the fundamental bankruptcy jurisdictional statute. It distinguishes between "cases" and "proceedings."   The distinction is highlighted in its title "Bankruptcy cases and proceedings."   The distinction is deeply embedded in its provisions.

The very first clause of Section 1334 grants to "the district courts … **original and exclusive jurisdiction of all cases under title 11."** 28 U.S.C. §1334 (a).   No state court can hear this bankruptcy case.   Only a United States District Court, or, by reference the Bankruptcy Court, may hear this case. *Cf.*   28 U.S.C. § 157 (dealing with reference to the Bankruptcy Court).   Because only a Federal Court can hear this "case" abstention in favor of proceedings in a State Court makes no sense.

Indeed, the statute does not provide for such abstention.   Instead, the statute provides for abstention only as to "proceedings":

> nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

16

28 U.S.C.A. § 1334 (West).   As to proceedings "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C.A. § 1334 (West). This case is not a "proceeding" and this Court is not granted the power to abstain.

Nor is the dispute as to ownership yet a "proceeding" which may be removed.   As Judge Queenan said in similar circumstances:

> We fail to see how § 1334(c)(2) can have any possible application here. First, there is not yet pending in this Court any "proceeding" upon which the statute can operate. All that is pending is a Chapter 11 "case" over which this Court (by reference from the District Court under 28 U.S.C. § 157) has original and exclusive jurisdiction pursuant to 28 U.S.C. § 1334(a). There will be a "proceeding" pending here when a claim is filed by or on behalf of Mrs. Dovydenas and an objection is made thereto.

*In re The Bible Speaks*, 65 B.R. 415, 431 (Bankr. D. Mass. 1986); *See, also, In re Gen. Carriers Corp.*, 258 B.R. 181, 190 (B.A.P. 9th Cir. 2001) ("One of the threshold requirements for mandatory or discretionary abstention, as set forth above, is that there must be a 'proceeding' from which the bankruptcy court can abstain. …A bankruptcy complaint must be filed with the clerk of court in the district in which the case is pending.… There is no pending proceeding unless an action either has been filed in a court, or has been removed to it.") (Citations omitted).

The case is not subject to abstention and there is yet no proceeding from which to abstain and so abstention may not be granted.

### B.  Even if the Court Could Abstain, Abstention is Not Warranted.

The Bankruptcy Case and the Essex Superior Court litigation are fundamentally different. The Bankruptcy case is essentially a mechanism to maximize the value of the assets of the project and adjust relations with creditors, while, the Essex County litigation is essentially a dispute between two non-debtors.   Admittedly one of those non-debtors (Invaleon) has inappropriately attempted to include relief that exercises control over assets of the estate, and to

17

that extent there is an overlap. But that overlap is not the grounds for abstention.

Admittedly also, some of the issues between the non-debtors include the allocation between them of the value of the equity in the debtor (if any). But that dispute is peripheral to the fundamental problem of the bankruptcy case: maximizing the value of the Debtor's assets and adjusting relations with creditors.

There are no grounds for abstention.

### III. RELIEF FROM <u>THE</u> AUTOMATIC STAY IS NOT PROPERLY SOUGHT, BUT IF IT WERE, TO A LIMITED EXTENT THE BERKOWITZ' WOULD ASSENT.

Invaleon asks the "**if the Court grants ITC's abstention request**" then it also asks for relief from the automatic stay. *Invaleon Motion*, p. 7 (emphasis added). The stay relief is requested on a conditional basis. The condition failing (there is no reason or power to abstain) the request seems mooted.

If Invaleon were to amend the Essex County complaint to remove requests for relief affecting property of the estate, the Berkowitz' would be willing to assent that the Essex County action may proceed unaffected by the automatic stay. The Berkowitz' would only ask that such amendment also amend to conform to the spirit of the rule that the complaint be a "short and plain statement." *Mass. R. Civ. P.* 8 (a).

### <u>CONCLUSION</u>

The petition was authorized and so dismissal is inappropriate because the only members at the time of the bankruptcy filing were Bonni and Barbara Berkowitz. As the sole members, they are authorized to conduct the affairs of the company. The possible equitable right of specific performance claimed by Invaleon is irrelevant to their authority.

Abstention is not authorized or warranted.

Stay relief is not warranted but if the Essex County complaint were amended to avoid the

request for relief against the assets of Rowley Solar, LLC, stay relief would not be needed to proceed in a lawsuit between two non-debtors.

*WHEREFORE*, the Objectors respectfully request that this Honorable Court order and decree as follows:

A. That this Objection be sustained;

B. That the relief sought in Invaleon Technologies Corporation's Motion be denied; or in the alternative:

C. That the Court schedule an evidentiary hearing on Invaleon Technologies Corporation's Motion; and

D. If such an evidentiary hearing is ordered that the Court establish deadlines and permit the parties to conduct discovery on the factual issues underlying the relief requested in the Motion; and

E. For such other and further relief as is just and equitable.

Respectfully submitted,
BARBARA BERKOWITZ and
BONNIE BERKOWITZ

By Their Attorneys,
FORD, MCDONALD, MCPARTLIN
& BORDEN, P.A.

Dated:  August 23, 2019          By:  */s/ Edmond J. Ford*
                                      Edmond J. Ford (BBO # 646710)
                                      10 Pleasant Street, Suite 400
                                      Portsmouth, New Hampshire 03801
                                      (603) 373-1600 Telephone
                                      (603) 242-1381 Facsimile
                                      eford@fordlaw.com

**CERTIFICATE OF SERVICE**

On August 23, 2019, I electronically filed this document through the CM/ECF system, which will send a notice of electronic filing to:

John Fitzgerald
Office of the U.S. Trustee
J.W. McCormack Post Office & Courthouse
5 Post office Square, 10th Floor, Suite 1000
Boston MA 02109
USTPRegion01.BO.ECF@USDOJ.GOV

Eric Bradford, Esquire
US Dept of Justice
Office of the US Trustee
5 PO Square, Suite 1000
Boston, MA 02109-3934
Eric.Bradford@usdoj.gov

Alan L. Braunstein, Esquire
Riemer & Braunstein, LLP
100 Cambridge Street, 22nd Floor
Boston, MA 02114
abraunstein@riemerlaw.com

Christopher S. Tolley
Phillips & Angley
One Bowdoin Square
Boston, MA 02114
ctolley@phillips-angley.com

John G. Loughnane, Esquire
Nutter, McClennen & Fish
World Trade Center West
155 Seaport Boulevard
Boston, MA 02110-2604
jloughnane@nutter.com

Heather Sprague
US Dept of Justice
Office of US Trustee
5 PO Square, Suite 1000
Boston, MA 02109-3934
617-788-0400
Heather.sprague@usdoj.gov

*/s/ Edmond J. Ford*
Edmond J. Ford , Esquire (BBO # 646710)
FORD, McDONALD, McPARTLIN & BORDEN, P.A.
10 Pleasant Street, Suite 400
Portsmouth, NH 03801-4551
T: 603-373-1737
F: 603-242-1381
Email: eford@fordlaw.com
Attorney for Barbara Berkowitz & Bonnie Berkowitz

f:\wpdata\ed\3661-001\pleadings\bankruptcy pleadings\objection to mtd .rtf