## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IN RE: | ) | |
|  | ) | |
| ROWLEY SOLAR LLC | ) | CHAPTER 11 |
|  | ) | CASE NO. 19-12419-FJB |
| DEBTOR | ) | |
|  | ) | |

**PROPOSED FINDINGS OF FACT AND RULINGS OF LAW CONCERNING
OBJECTION OF INVALEON TECHNOLOGIES CORPORATION
TO CLAIMS FILED BY BONNI BERKOWITZ, BARBARA BERKOWITZ AND
<u>MAVEN REALTY TRUST</u>**

Invaleon Technologies Corporation ("ITC") files its Proposed Findings of Fact and Rulings of Law concerning ITC's December 26, 2019 objection to claims filed by Dr. Bonni Berkowitz ("Dr. Berkowitz"), her mother Barbara Berkowitz ("Ms. Berkowitz"), and Maven Revocable Trust ("Maven" and collectively with Dr. Berkowitz and Ms. Berkowitz, the "Berkowitz Parties").

**Introduction**

The Berkowitz Parties seek to prosecute their claims in contravention of a settlement agreement approved in connection with a sale order issued by this Court. As justification for ignoring their agreement and court-imposed duties, the Berkowitz Parties allege that the settlement was procured by fraud.

As detailed below, despite prolonging this bankruptcy case by well more than a year through discovery and a trial on their claim response, the Berkowitz Parties have demonstrated no fraud justifying their noncompliance.

The Berkowitz Parties did succeed, however, in unveiling facts showing something else entirely—their role in trying to subvert the bankruptcy process and deprive value to the estate. The undisputed evidence reveals that the Berkowitz Parties falsely claimed lack of notice about the original claims objection deadline and willfully disobeyed lawful orders of this court to impose new economic damage on ITC.

The recently concluded trial confirms not just a lack of fraud by ITC but a concentrated effort by the Berkowitz Parties to disrupt the orderly implementation of this Court's orders all for their own self-interest.

Having invoked chapter 11 and avoided the risk of an adverse decision from this Court on ITC's motion to dismiss, the Berkowitz Parties engaged in conduct designed to achieve their true desire—sole ownership of a project built at considerable expense by others (including ITC).

Normally a court would need to appoint a chapter 11 trustee or examiner to uncover this level of malfeasance and violation of fiduciary duty by a debtor in possession. As the trial demonstrated, Dr. Berkowitz is no stranger to violation of fiduciary duties.[1] Here the quixotic effort to employ new counsel to pursue fraud claims has proven nothing. The Berkowitz Parties have only succeeded in unmasking their own misdeeds for which they should be held accountable.

In short, the Berkowitz Parties' responses to ITC's claims objections have proven to be frivolous. ITC reserves all rights, including without limitation to request an order to show cause as to why the Berkowitz Parties should not have to return funds paid under the court ordered

---

[1] Dr. Berkowitz was accused in a civil suit by her father to have forged his signature in order to sign over the father's assets against his will. A jury found Dr. Berkowitz liable, and the judgment was affirmed by the First Circuit. Bonni Berkowitz, April 8, 33:4 – 34.8.

Citations to the April 7-8, 2021 evidentiary hearing transcript follow the format: [witness], [April 7 or 8], [page and line number(s)].

stipulation, deliver the release required under that stipulation, reimburse ITC and the estate for expenses incurred, and for consideration of such other just and appropriate relief arising from their highly troubling conduct before this Court.

## Procedural Background

Before turning to the proposed findings of fact and conclusions of law, ITC provides the following procedural background. Given the nature and timing of the Berkowitz Parties' claims of fraud against ITC, the procedural background is essential for context.

*Pre-Chapter 11 Petition and Motion to Dismiss*

1. On July 17, 2019 ("Petition Date"), the Berkowitzes, each purporting to be the sole members of Rowley Solar LLC ("Debtor"), commenced a voluntary petition ("Petition") for relief for the Debtor under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq.

2. ITC filed an Expedited Motion to Dismiss challenging the authority of the Berkowitzes' to act for the Debtor. D.I. 25. The Motion to Dismiss detailed ITC's arguments that the Berkowitzes were no longer members of the Debtor on the Petition Date. The motion described the history of the relationship between and among ITC and the Berkowitz Parties, which centered on the development of a solar farm in Rowley, Massachusetts.

3. Central to the ownership dispute was an agreement entitled "Membership Interest Purchase Agreement" ("MIPA") under which ITC bought from the Berkowitzes, "all of the issued and outstanding membership interests in" the Debtor in exchange for a payment of $293,460 (called the "Closing Payment" in the MIPA). Exhibit 3 to Berkowitz 26, ¶ 1.[2] The

---

[2] Citations to exhibits admitted during the April 7-8, 2021 evidentiary hearing follow the format: Berkowitz [exhibit no.].

3

Closing Payment consisted of $250,000 paid directly to the Berkowitzes and $43,460 paid to the Town of Rowley Conservation Commission. *Id.*

4. ITC wired $250,000 to the Berkowitzes, in accordance with their instructions, on December 17, 2018. Berkowitz 26, ¶¶ 9-10. ITC also sent the $43,460 portion of the Closing Payment to the Town of Rowley Conservation Commission on or about December 17, 2018. *Id.* In its Motion, ITC argued that under the MIPA, ITC obtained ownership of all membership interests in the Debtor upon the payment of the Closing Payment. *Id.* ¶ 11.

5. In connection with execution of the MIPA, on December 14, 2018, the Debtor entered into a lease agreement for the entity's use of certain property owned by Maven ("Lease"), with Maven as lessor and the Debtor as lessee. Exhibit 4 to Berkowitz 26. The Debtor included the Lease in its Schedule G listing of Executory Contracts and Leases.

6. In return for the Closing Payment, the Berkowitzes needed to contemporaneously produce all membership certificates for the Debtor (if any existed), the books and records of the Debtor, and various other documents (collectively, the "Rowley Solar documents") to ITC. Exhibit 3 to Berkowitz 26, ¶ 6.2.1. Despite repeated requests over months for these documents, ITC was unable to obtain the Rowley Solar documents from the Berkowitzes. Tom Wu, April 7, 99:25 – 100:6.

7. ITC thus filed suit on June 7, 2019 in Essex County Superior Court. Berkowitz 7. The Complaint sought, among other things, injunctive relief forcing the Berkowitzes to fulfill obligations under the MIPA. *Id.*, ¶¶ 268-301.

8. After that litigation commenced, settlement discussions ensued, and ITC and the Berkowitzes signed a "MIPA Satisfaction Acknowledgement." Exhibit 5 to Berkowitz 26. In that document, ITC agreed to pay the Berkowitzes the remaining $656,000 owed under the MIPA and

in exchange, the Berkowitzes acknowledged that they had "transferred, conveyed, granted, sold, transferred [sic], assigned and/or delivered to [ITC], without reservation or recourse, all rights, title, and interest in 100% of the membership in [Rowley Solar]." *Id.*, ¶ 18.

9.  As asserted by ITC in its Motion to Dismiss, ITC understood the Berkowitzes had agreed to meet with ITC, with respective counsel, in person, after execution of the MIPA Satisfaction Acknowledgement. Berkowitz 26, ¶ 19. The purpose of the meeting was for the Berkowitzes to deliver the Rowley Solar documents, as required under the MIPA, and for ITC to deliver to the Berkowitzes a certified check for $656,000. *Id.*

10. Before this planned meeting took place, Dr. Berkowitz signed the Petition on the Petition Date, purportedly as a member of Rowley Solar. D.I. 1.

*Stipulation, Sale Motion, and Hearing*

11. The Court held a hearing on ITC's Motion to Dismiss and took the matter under advisement.[3] The parties began negotiations in the halls outside the courtroom. Alan Braunstein, April 7, 150:24 – 151:13. Debtor's counsel represented the Debtor had obtained three offers for a sale. *Id.*

12. On September 18, 2019, the Court issued an order noting that the parties reported the matter settled and ordered settlement documents to be filed on or before September 20, 2019. D.I. 50.

---

[3] The conduct of the Berkowitz Parties in reneging on an agreement and lack of appreciation for the rule of law was observed by the Court on the hearing on the motion to dismiss. D.I. 96, Official Transcript of August 27, 2019 hearing, 34:2-3 ("What did they do, have a change of heart? Is that what happened? They don't want to do this anymore?"); 34:15-15 ("All right, so they changed their minds. They don't want to do it anymore for the reasons you just stated."); 33:2-4 ("You see this place? You see that sign? This is a court of law, right? And so, I'm here to – I'm here to make sure that it gets done right.").

13. On September 20, 2019, the Debtor moved for approval for a Stipulation of Settlement. D.I. 52. The motion stated, among other things:

- Prior to the hearing, the Debtor had received and has continued to receive multiple offers from third parties seeking to acquire the tangible assets of the Debtor pursuant to section 363 of the Code. Such assets consisted of a Solar Farm and associated permits to operate the Solar Farm pursuant to, among other permits, a permit with Rowley Municipal Light Plan ("RMLP") to supply renewable solar energy to the Town of Rowley (collectively, the "Project Site"). *Id.*, ¶ 4.

- The Debtor asserts and continues to assert that the most valuable asset of the Debtor is the RMLP Permit. The Debtor further asserts that disputes between the Berkowitzes and ITC, among them a pending lawsuit by ITC against the Berkowitzes in Essex County Superior Court (the "Essex Action"), threatened the value of the RMLP Permit. The Essex Action also sought injunctive relief which, if allowed, would, according to the Debtor, not only compromise the ability to operate or seek any other disposition of the Project Site but also jeopardize the contract with RMLP and losses in enterprise value because of expiring tax benefits. *Id.*, ¶ 5.

- The Settlement ***resolves all disputes between the Berkowitzes and ITC*** including without limitation the disputes underlying the Essex Action, as well as a certain action pending in Middlesex County, by a Sonepan Distribution New England, Inc. ("Sonepan") subcontractor of ITC which also named the Debtor as a defendant (which action has been stayed as against the Debtor pursuant the [sic] a certain Suggestion of Bankruptcy filed by the Debtor in the Sonepan Action) and the disputes underlying the motion to dismiss and objections thereto. Most importantly for the Chapter 11 Case the Settlement also ensures timely payments to creditors.[4] *Id.*, ¶ 7 (emphasis added).

14. The motion to approve the Stipulation also explained that ITC must satisfy all claims "such that all construction liens, mechanics liens, threatened liens….recorded or sought to be recorded against the real property that includes the Project Site… shall be discharged and released and all lawsuits of any claimants relating to the Project Site, real property and Berkowitzes also be dismissed." *Id.* ¶ 10.

---

[4] Per Part 3, Question 7 of the Amended Schedules, the Debtor listed an action captioned Sonepar Distribution New England, Inc. v. Invaleon Technologies Corp., Monglun Wang and Jiong Wu (defendants) v. Rowley Solar LLC and trustee of the Maven Revocable Trust (reach and apply defendant), No. 19-1570.

6

15. The motion to approve the Stipulation also noted that $75,000 was to be paid "to the Berkowitzes as full satisfaction of all claims against the Debtor and/or ITC held by them except as otherwise provided in the Settlement (with any remaining such claims released); provided however that all claims for past due and future rent to Maven Revocable Trust shall survive and shall be paid by the Purchaser." *Id.* ¶ 9.

16. Finally, the motion to approve the Stipulation noted that the Stipulation required mutual general releases. *Id.* ¶ 15.

17. On November 19, 2019, the Court held a hearing on the request to approve the Stipulation and Sale Order. The Berkowitz Parties and their counsel attended and participated. Bonni Berkowitz, April 7, 232:21 – 235:23. Dr. Berkowitz actively participated in the discussions in the courtroom hallways. *Id.* Counsel for the Berkowitz Parties attended and confirmed he helped draft the Stipulation. D.I. 145, Official Transcript of November 19, 2019 hearing, 73:25 – 74:9.

18. The Berkowitz Parties did not seek to amend Appendix C or disclose any plans to file new claims. *See generally, id.*

19. Debtor's counsel raised two issues at the hearing pertaining to the sale. First, he said that one bidder asserted that about $300,000 in corrective repairs were needed at the project. Second, counsel stated he recently became aware of questions regarding the validity of the mechanical completion certificate for the project. The Court presided over discussion of these two issues in open court at the hearing. *Id.*, 47:24 – 48:1.

20. Debtor's counsel, in fact, at the start of the hearing informed the Court that the Debtor did not want to proceed with the motion to approve the Stipulation. *Id.*, 19:7-12.

7

21. After much discussion, the Court and counsel for ITC had the following exchange:

> Mr. Loughnane: At the beginning of the hearing, we heard that there was a need to blow up the stipulation because of fraud, other issues having to do with Invaleon's conduct, and luring the debtor into --
>
> The Court: That's gone away.
>
> Mr. Loughnane: -- a stipulation.
>
> The Court: I mean, the reason that's gone away is because you have a buyer here now --
>
> Mr. Loughnane: Right.
>
> The Court: -- who has said I'll take the risk --
>
> Mr. Loughnane: Exactly.
>
> The Court: -- on it. (Indiscernible) your cooperation by the way. I'm not forgetting he said that.
>
> Mr. Loughnane: Understood.
>
> The Court: But so that's not an issue.

*Id.*, 53:18 – 54:8.

22. The Court then instructed the parties: "Go resolve this. Go get it done. . . . You got a valid buyer here. And it seems to me you ought to get this thing done." *Id.*, 56:9-14.

23. After a break of over an hour, Debtor's counsel confirmed to the Court that the parties were working "to try to firm up a resolution globally." *Id.*, 78:20.

24. The Berkowitz Parties and their counsel voiced no objection to the approval of the Stipulation or Sale Motion and did not contend that Maven was exempt from the relief requested.

8

25. The Court approved the Stipulation the same day and entered the Sale Order on November 26, 2020. Hours later, the Berkowitz Parties filed four claims ("Berkowitz Party Claims") along with certain other claims not relevant here.[5]

26. The Berkowitz Party Claims were filed by counsel to the Berkowitz Parties, Attorney Ed Ford, through the ECF system on November 26, 2019 between 2:09 and 2:19 pm—just over three hours after the Court entered its Sale Order.

27. The Sale closed on or about December 6, 2019. A few days later, Attorney Ford withdrew from his representation.

*Service of the Claims Objection*

28. On December 26, 2019, ITC finished its review of claims filed against the Debtor and filed its Omnibus Objection to Certain Claims.

29. The Berkowitz Parties did not list Attorney Ford's contact information in Part 1, Question 3 of the proof of claim form which requires a claimant to provide an address for notices concerning a filed claim. Instead, in an apparent foreshadowing of their litigation conduct to come, the Berkowitz Parties listed multiple, sometimes incorrect addresses, which did not match the addresses provided in the schedules filed by the Debtor. Claim Nos. 7-12.

30. The filed claims and schedules prepared by the Berkowitz Parties yield three different street addresses: (i) 61 Pleasant Street, #1386 Rowley, MA 01950; (ii) 61 Pleasant Street, #1386 Newburyport, MA 01950; and (iii) 61 Pleasant Street, Newburyport, MA 01950. *Id.*

---

[5] The Berkowitz Party Claims consist of Claim 8 filed by Maven Revocable Trust, Claims 10 and 11 filed by Dr. Berkowitz, and Claim 12 filed by Ms. Berkowitz.

31.     In serving the objection on the Berkowitz Parties, ITC included ***all three*** variations of these street addresses as evidenced by its Certificate of Service filed on December 26, 2019. D.I. 131.

32.     The Berkowitz Parties, though, cited to alleged incorrect service in requesting an extension of time to respond to ITC's claim objections, which the Court granted. Counsel for the Berkowitz Parties represented to the Court that Dr. Berkowitz "could not recall" whether she received service of ITC's claim objections.[6] D.I. 154 at 14:30.

*Claims Objection Responses*

33.     With the time for a response extended, the Berkowitz Parties filed a Response. D.I. 162. The Response included several demonstrably false statements alleging theories of fraud now abandoned, including without limitation:

- "[I]t been [sic] discovered that communications and financial arrangements between Power Fund and Invaleon had taken place" before the sale hearing. *Id.*, ¶ 3.c.

- "[T]he successful bidder of the project, Power Fund, is not running or operating the project, and on information and belief, they do not have experience in constructing and operating such a project. In fact, to the shock of the Responding Parties, the entity that has been coming to the premises to do construction and run the project has been none other than Invaleon." *Id.*, ¶ 4.a.

- "[I]t has been revealed, prior to the sale, there have been communications between Invaleon and Power Fund, the nature and extent of which are not known." *Id.*, ¶ 4.c.

---

[6] ITC notes that although copies of the Objection went to all three variations of the street addresses in the Claims and Schedules, the Certificate of Service indicates that the Claimant name did not always perfectly align with the specified address per the claim

ITC also notes that, in seeking an extension to respond, the Berkowitz Parties cited to other non-address factors which the Court also considered in making its decision. While ITC understood and accepted the Court's determination at the February 24, 2020 hearing, the circumstances giving rise to the request for an extension deserve renewed consideration given the nature of the substantive arguments raised by the Berkowitz Parties.

34.    The Berkowitz Parties next filed, per Court order, D.I. 172, their Supplemental Statement of their claims of "misrepresentation" against ITC, D.I. 178. The bulk of the Supplemental Statement summarizes and reiterates various pre-petition disputes of no relevance here. *See id.*, ¶¶ 1-8. The rest of the Supplemental Statement summarizes issues raised by Debtor's counsel at the sale hearing, *see supra* ¶¶ 19-23, and the Berkowitz Parties' baseless and now-abandoned speculations about a relationship between Invaleon and the Buyer. D.I. 172, ¶ 15.

35.    The Court held an evidentiary hearing on April 7 and 8, 2021. Notably absent from the witness list was former counsel to the Berkowitz Parties, Attorney Ford, who presumably would have been best positioned to testify as to any fraud. Instead, the Berkowitz Parties called (among others) a soil expert, an engineer, a municipal light official, and two attorneys—including Chapter 11 counsel for the Debtor.

**Proposed Findings of Fact**

36.    Richard Volkin, an engineer licensed in Massachusetts, visited the solar project site twice, on February 7, 2019 and February 19, 2019. Richard Volkin, April 7, 130:13-19, 139:3-8. During the second visit, Mr. Volkin observed that the project was "mechanically fastened" and that the mechanical connections he saw were "very similar" to other ground-mounted solar systems that Mr. Volkin had inspected for Invaleon in the past. *Id.*, 141:16 – 142:7. Based on his observations, Mr. Volkin issued a mechanical completion certificate on February 21, 2019. Berkowitz 18.[7]

---

[7] There is some evidence in the record that the second visit may have been on February 20, 2019. *Compare* Berkowitz 17 (Affidavit of Richard Volkin) *with* Berkowitz 18 (revised affidavit). Either way, Mr. Volkin's testimony was clear that he visited the site twice before issuing the mechanical completion certificate.

37.     Around February 2019, the relationship between the Berkowitzes and ITC had soured, and the Berkowitzes asked that all communications go through their attorney. Tom Wu, April 8, 53:3-22. Since that request, there were no direct communications between ITC and the Berkowitz Parties. *Id.*

38.     In September 2019, the Stipulation was negotiated, mainly at a marathon, day-long session at the office of Debtor's counsel. Tom Wu, April 8, 55:24 – 56:13. The attorneys moved from room to room, but the parties did not have direct contact and did not leave their respective rooms. *Id.* 56:8-13.

39.     During the morning, counsel for the Berkowitz Parties spoke to ITC and its counsel on concerns about soil. Tom Wu, April 8, 56:21 – 57:7. The rest of the day focused on selling the asset through a bankruptcy sale process. Alan Braunstein, April 7, 157:4 – 159:15; Tom Wu, April 8, 57:8-17.

40.     During this negotiation session, Tom Wu made no statements about mechanical completion, corrective repairs, project readiness, or permitting. Tom Wu, April 8, 57:18 – 58:16.

41.     Dr. Berkowitz's version of events, as purportedly relayed to her by Attorney Ed Ford, lacks credibility. First, as noted, the Berkowitz Parties did not call Attorney Ford as a witness. Second, Dr. Berkowitz's testimony, that Mr. Wu threatened that the Berkowitzes could lose their home and farm, is incongruous with the tenor of the discussions described by Debtor's counsel. Bonni Berkowitz, April 7, 230:7-14; Alan Braunstein, April 7, 157:4 – 159:15.

### Proposed Rulings of Law

42.     Merely to move past the pleading stage in a fraud action, a party must spell out the "content of the alleged misrepresentation with specificity." *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010). Here, after a two-day evidentiary hearing which followed an extensive

opportunity for discovery, the Berkowitz Parties have provided zero evidence of the specific contents of an alleged misrepresentation.

43. Moreover, "[t]o establish fraud in the inducement, and thereby be relieved of the effect of" the Stipulation, the Berkowitz Parties must "establish the elements of common deceit." *See Commerce Bank & Trust Co. v. Hayeck*, 46 Mass. App. Ct. 687, 692 (1999). Those elements "include misrepresentation of a material fact, made to induce action, and reasonable reliance on the false statement to the detriment of the person relying." *Id.* Besides failing to show the specific contents of a material misrepresentation, the Berkowitz Parties have failed to prove that any statements made during the attorney-led marathon negotiation session, or elsewhere, were knowingly and falsely made to induce settlement. *See id.*

44. Any statements on mechanical completeness, including deposition testimony, accurately reflect Mr. Wu's understanding that the project was mechanically complete as of February 21, 2019. Mr. Volkin's testimony confirms that Mr. Wu had a basis for that understanding. The Berkowitz Parties have failed to prove fraud based on statements about mechanical completeness.

45. As for all other statements, the evidence offered by the Berkowitz Parties as to what was said during negotiations describes purported statements in only vague and general terms. Moreover, Mr. Wu testified that he made no statements during negotiations about mechanical completion, corrective repairs, project readiness, or permitting. The Berkowitz Parties have failed to prove fraud based on statements made during negotiations of the Stipulation.

46. The Stipulation also speaks for itself. The Stipulation contains no representations or warranties of ITC (or any other party) of any nature. And ITC was not a party to the Asset

13

Purchase Agreement. The Court approved the Stipulation as drafted upon the request of the parties after full and fair notice and opportunity to be heard.

47. The evidence shows that a bitter dispute over the ownership of the Debtor was resolved by a rationally thought-out settlement agreement negotiated by fully represented parties through experienced counsel.

48. Having failed to show fraud, the Stipulation is fully enforceable against the Berkowitz Parties. ITC's objection to the Berkowitz Party Claims is sustained and those claims are disallowed.

Dated: May 20, 2021

INVALEON TECHNOLOGIES CORPORATION
By its attorneys,

/s/ John G. Loughnane
John G. Loughnane (BBO #557599)
jloughnane@nutter.com
Joseph T. Toomey (BBO # 682675)
jtoomey@nutter.com
Nutter, McClennen & Fish, LLP
Seaport West
155 Seaport Boulevard
Boston, MA  02210
(617) 439-2000

**Certificate of Service**

I certify that on May 20, 2021, I electronically filed the foregoing using the CM/ECF system, which will send electronic mail notification to all registered participants.

/s/ John G. Loughnane
John G. Loughnane